Robert McCuen, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Submitted on Briefs November 1, 1984, to Judges
ROGERS, WILLIAMS, JR. and Senior Judge KALISH, sit-
ting as a panel of three.

*Shelley W. Elovitz, Watzman & Elovitz,* for peti-
tioner.

*James K. Bradley,* Associate Counsel, with him,
*Charles G. Hasson,* Acting Deputy Chief Counsel, for
respondent.

OPINION BY JUDGE WILLIAMS, JR., January 11, 1985:
Robert McCuen (claimant), a substitute school
teacher, has appealed from an order of the Unemploy-
ment Compensation Board of Review (Board) deny-
ing him benefits for claim weeks within the summer

recess that followed the 1981-82 school year. The Board, by its order, adopted and affirmed a referee's decision which concluded that the claimant had a reasonable assurance of being reemployed as a substitute teacher in the 1982-83 school year, and that the claimant was thus ineligible for benefits during the period in question by force of Section 402.1(1) of the Unemployment Compensation Law (Law).[1]

The employer involved in this case is the Moon Area School District (Moon School District), which first employed Mr. McCuen in October of 1980 as a part-time, substitute teacher. On June 12, 1981, the end of the 1980-81 school year, McCuen was furloughed by the Moon School District. Later in the summer of 1981 McCuen taught for about 6 weeks in a program conducted by another school district. When that program ended in August 1981, McCuen applied for and was granted unemployment benefits, which he continued to collect until sometime in February 1982.

On March 1, 1982, McCuen was recalled by the Moon School District to fill a 3-month assignment—until the end of that school year—as a substitute for a teacher who had taken a maternity leave. When the 1981-82 school year ended on June 4, 1982, McCuen was again furloughed by the Moon School District. The employer did, however, offer him a teaching position in a 4-week summer-school program it was going to conduct. McCuen accepted the offer, but taught only for about a week. When the summer-school program ended on July 12, 1972, McCuen filed a renewed claim for unemployment benefits pursuant to his original application. He proceeded to collect benefits for part of July and part of August, 1982.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, as amended, 43 P.S. §802.1(1).

On August 25, 1982, the claimant received and accepted an oral offer from the Personnel Director of the Moon School District, to substitute for a teacher who would be on leave at the beginning of the 1982-83 school year. McCuen began that assignment on August 27, 1982, which was the first day of the new school year. Later, by a letter dated September 14, 1982, the Personnel Director notified Mr. McCuen that the Board of the Moon School District had formally approved him as a substitute teacher for the 1982-83 school year.

On November 6, 1982, the Office of Employment Security (OES) issued a determination that, under the terms of Section 402.1(1) of the Law, McCuen was not eligible for the benefits he received during the summer of 1982. As for the checks the claimant received during that period, the OES determined that they were a non-fault overpayment. Both determinations were upheld by the referee's decision and the Board's affirmance.

Section 402.1(1) of the Law bars an instructional employee in an educational institution from receiving benefits for periods between successive academic years or terms, "if such individual performs such services in the first of such academic years or terms and if there is a contract or a reasonable assurance that such individual will perform services in any such capacity for any educational institution in the second of such academic years or terms." Thus, if the instant claimant had, at the end of 1981-82 school year or at some other point prior to his application for benefits, a "reasonable assurance" of being reemployed by the Moon School District as a substitute teacher in the 1982-83 school year, he would not have been eligible for unemployment benefits during the summer recess of 1982.

The term "reasonable assurance" is not statutorily defined. However, in interpreting that phrase, we have held that "there must be some evidence of mutual commitment or assurance between the teacher and employer to recall the former, so that the teacher can be said to have a reasonable expectation of returning to employment in the next term." *Aronson v. Unemployment Compensation Board of Review,* 56 Pa. Commonwealth Ct. 177, 179, 424 A.2d 972, 973 (1981); *see Goralski v. Unemployment Compensation Board of Review,* 48 Pa. Commonwealth Ct. 39, 408 A.2d 1178 (1979). Although a mere hope of returning to work in the fall does not rise to the level of a "reasonable assurance," there need not be a guarantee of future employment. *Bornstein v. Unemployment Compensation Board of Review,* 69 Pa. Commonwealth Ct. 521, 451 A.2d 1053 (1982).

One of the factors to be considered in determining whether a teacher has a "reasonable assurance" of returning to work, is his employment history. *Neshaminy School District v. Unemployment Compensation Board of Review,* 57 Pa. Commonwealth Ct. 543, 426 A.2d 1245 (1981). We have also held that when an employer offers to put a teacher's name on a list of callable substitutes, and the teacher accepts the offer, such circumstances constitute a reasonable assurance. *Bitler v. Unemployment Compensation Board of Review,* 56 Pa. Commonwealth Ct. 403, 425 A.2d 54 (1981). The same result follows when the employer puts the teacher's name on a list of substitutes, and communicates that fact to the teacher. *Bornstein; Neshaminy School District; Goralski.*

In the instant case, the referee's finding that McCuen had a reasonable assurance of returning to the Moon School District, as a substitute teacher in the 1982-83 school year, was based on a labor agreement

that existed between the school district and the teachers' union.[2] The school district's Personnel Director, who was its witness before the referee, testified that the labor agreement required the Moon School District to carry all teachers furloughed at the end of a school year on its substitute list for the following school year, and to recall them for available substitute positions in the order of seniority. According to this witness, all teachers furloughed on June 4, 1982, including Mr. McCuen, were covered by the foregoing provision, with respect to being recalled in the 1982-83 school year. The Personnel Director also testified that when teachers were furloughed they were informed of their reemployment rights under the labor agreement.

The focus of the claimant's testimony seemed to be on the fact that the Moon School District took until August 25, 1982, to actually offer him a substitute teaching position in the 1982-83 school year, and that he had been given no offer of such a position prior to that date. This testimony, in our view, was no more than an assertion that he had not been *guaranteed* a position when the previous school year ended or prior to his application for benefits. Of course, as we have already pointed out, the lack of a *guarantee* would not have entitled the claimant to benefits. *Bornstein; Hansen v. Unemployment Compensation Board of Review*, 54 Pa. Commonwealth Ct. 440, 422 A.2d 707 (1980).

---

[2] During the hearing, the referee also mentioned an alleged letter which, supposedly, was written about June 19, 1982, telling McCuen that he *might* be called as a permanent substitute in the upcoming school year. One of the assertions made by the claimant in the present appeal is that, since the alleged letter was never introduced at the hearing or made part of the record, the referee should not have considered it. However, we need not address this argument; for the referee made no finding whatsoever concerning such a letter, and it played no part in his decision.

The claimant, in his testimony, indicated that he had been aware of the teacher-recall provisions in the school district's labor agreement. Indeed, he admitted that when he was recalled as a 3-month substitute in March of 1982 it was pursuant to the terms of that agreement. However, the claimant also opined that, when he was furloughed in June of 1982, his seniority with the Moon School District was such as to put him "relatively at the bottom" of the substitute list. With regard to the last assertion, the claimant produced no evidence; and no finding was made by the referee concerning it. Relying on our decision in the *Borstein* case, McCuen here argues that the referee's failure to make a finding as to his seniority on the substitute list, and the effect of that rank on his prospect of being recalled, requires a remand of the instant matter. We disagree.

The claimant reads *Bornstein* as meaning that the placement of a substitute teacher on the substitute list for the school year in question, and the teacher's awareness of that fact, are not sufficient to permit a finding of "reasonable assurance." Further, according to the claimant, the *Bornstein* case means that a determination of "reasonable assurance" cannot be made unless the referee makes a finding as to the teacher's relative position on the substitute list, and as to the effect of that rank on his chances of being recalled for substitute teaching. We must conclude, however, that the *Bornstein* opinion, upon being read closely, does not generate the gloss the instant claimant would give it. And, for us to so interpret the case would create a requirement not imposed by *Neshaminy School District, Bitler, Hansen* or *Goralski*—all of which addressed the significance of a teacher's name being placed or carried on the substitute list for the year in question.

In the *Bornstein* case, the teacher had been changed in status from long-term substitute during the previous school year, to per diem substitute for the next year. She attempted to demonstrate to the referee that she had low seniority as a per diem substitute and thus had little chance of being offered an assignment. True, in ordering a remand in *Bornstein,* we observed that the teacher had sought to offer such proof, and that the referee had failed to make a finding concerning it. However, we made those observations in the context of pointing out that, because of *other omissions* in the referee's findings, we could not decide whether the teacher's employer had, *in any way,* given her reason to expect a substitute-teaching assignment in the upcoming school year. It was the latter deficiency in the referee's findings that compelled us to order a remand in *Bornstein.* If, in that case, the referee had made supported findings which showed that the teacher's employer had put her name on its substitute list, that she had been made aware of being on the list, and that she was entitled to be recalled according to her seniority, then the issue of "reasonable assurance" could have been decided without considering her relative rank on the substitute list. *See Richland School District v. Unemployment Compensation Board of Review,* 74 Pa. Commonwealth Ct. 413, 459 A.2d 1358 (1983); *Neshaminy School District; Hansen.*

In the case at bar, the claimant, Mr. McCuen, had been on Moon School District's substitute-teacher list for the 1982-83 school year since the end of the previous term. He was on that list by force of a binding labor agreement of which he was aware, and which entitled him to be recalled in the order of his seniority. The record also shows that he had been called as a substitute, by the Moon School District, in each of the

two academic years preceding the one involved here. That same school district offered him a teaching assignment in the program it conducted in the summer of 1982; and, even before the 1982-83 school year began, offered him a teaching position for at least part of that academic year. Although these last two facts are not, of themselves, determinative of whether Mc-Cuen had a "reasonable assurance" at the end of the previous academic year, they are facts that can be taken as being indicative of his relationship with the school district.

In cases of this type, the question of whether the teacher-claimant had a "reasonable assurance" of reemployment is one for the Board to decide, after examining all the relevant facts. *Hansen; Goralski.* In our view, the evidence and findings in the instant matter are sufficient to establish that the claimant had a "reasonable assurance," even without a finding as to his relative position on his employer's substitute list.[3] In sum, we conclude that the matter was decided correctly.[4]

For the reasons set forth in the opinion, we must affirm the Board's order.

## ORDER

AND Now, the 11th day of January, 1985, the order of the Unemployment Compensation Board of Review, at Decision B-214516, is hereby affirmed.

Judge KALISH dissents.

---

[3] If, in such circumstances, a teacher's relative position on the substitute list was deemed to be a necessary consideration, by what orderly standard would the compensation authorities decide that some positions on the list presented an opportunity for reemployment and others did not?

[4] In reaching this conclusion, we reject the claimant's other assertion in this case: that the referee did not give him the requisite assistance during the hearing.